(704 P.2d 394)

No. 57,321

MITCHELL EDWARD SPRINGSTON, *Appellee,* v. IML FREIGHT, INC. and TRANSPORT INDEMNITY COMPANY, *Appellants.*

Petition for review denied September 27, 1985.

Opinion filed August 1, 1985.

*John D. Jurcyk* and *Wade A. Dorothy,* of McAnany, Van Cleave & Phillips, of Kansas City, for appellants.

*Michael E. Callen,* of Callen, Sexton & Shelor, of Kansas City, for appellee.

Before REES, P.J., PARKS and MEYER, JJ.

PARKS, J.: This is an appeal of a workers' compensation case by the employer IML Freight, Inc. The significant issue is whether claimant, Mitchell Edward Springston, sustained a compensable injury which arose out of his employment. The administrative law judge found the injury was not compensable but the director reversed. The district court adopted the findings of the director and the employer appeals.

The injury to claimant occurred when he and another employee, Hinds, quarreled over who had the right to drive a particular truck from Goodland to Kansas City. The dispute arose from differences in interpretation of company policy concerning priorities among drivers. Claimant and Hinds argued and then scuffled. The two men separated and claimant was struck from behind by an unseen assailant. The blow to his head caused serious injury to claimant. Although claimant could not identify his assailant, the only other person in the vicinity at the time of his argument with Hinds was another employee, Holder.

In order for a worker's injury to be compensable, the worker

must be able to establish that the injury occurred by accident "arising out of" and "in the course of" employment. K.S.A. 44-501. The two phrases, "arising out of" and "in the course of," have separate and distinct meanings and they are conjunctive; each condition must exist before compensation is allowable. *Martin v. U.S.D. No. 233,* 5 Kan. App. 2d 298, 299, 615 P.2d 168 (1980). Generally, the requirement that the injury be sustained "in the course of employment" simply means that the injury happened while the worker was at work in his employer's service. The phrase refers to the time, place and circumstances under which the accident occurred. *Lentz v. City of Marion,* 222 Kan. 169, 174, 563 P.2d 456 (1977). The specification that the injury arose "out of" employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment if it arises out of the nature, conditions, obligations and incidents of the employment. *Martin,* 5 Kan. App. 2d at 299. Finally, whether an accident arises out of and in the course of the worker's employment depends upon the facts peculiar to the particular case. *Messenger v. Sage Drilling Co.,* 9 Kan. App. 2d 435, Syl. ¶ 3, 680 P.2d 556, rev. denied 235 Kan. 1042 (1984).

In this case, there is no question but that the claimant's injury was sustained in the course of his employment. Claimant was attempting to carry out his job when he was injured. However, the employer has consistently argued that the injury did not arise out of claimant's employment but was the result of personal differences with the other employees involved. Both the director and the district court disagreed with the employer's characterization of the evidence, concluding that the accident did arise out of claimant's employment.

At one time it was held that an employee could not recover compensation for an on-the-job assault by another employee unless the wrongful conduct had become so habitual that the employer knew or should have known of the likelihood of its recurrence. *Peavy v. Contracting Co.,* 112 Kan. 637, 211 Pac. 1113 (1923). This rule was followed until *Peavy* was overruled in *Brannum v. Spring Lakes Country Club, Inc.,* 203 Kan. 658, 668, 455 P.2d 546 (1969). *Brannum* rejected the application of the tort concepts of foreseeability and negligence which had been applied in earlier cases and held that an injury by assault arises

"out of" employment when it arises out of the nature, conditions, obligations and incidents of the employment in the same manner as any other injury. As a consequence, *Brannum* held that a supervisor who was assaulted by an employee disgruntled over the conditions of work imposed upon him by the supervisor in the discharge of his duties was entitled to workers' compensation benefits.

The employer contends that the holding of *Brannum* should be confined to cases in which the assault is perpetrated by an employee upon a supervisor and should not apply to the fight between two similarly situated employees. It contends that when the claimant is assaulted by a co-employee, he must satisfy the old rule and prove that the employer had knowledge of the danger to the claimant before his injury can be said to have arisen out of his employment. Such a holding would illogically condition compensability on the worker's position in the job hierarchy; a supervisor could qualify for compensation under circumstances in which a laborer could not. The employer's proposed rule would also impose the tort concept of foreseeability, which *Brannum* concluded was irrelevant to a worker's right to compensation (*Brannum*, 203 Kan. at 666), on only one isolated portion of workers' compensation law. Such a narrow construction of *Brannum* is not justified.

Turning now to the particulars of this case, the director held that the injury to claimant arose out of a combination of preexisting animosity toward claimant and a current dispute over work rules. However, the director concluded that the existing animosity of the probable assailant also resulted from a work dispute and not personal feeling which would have arisen outside of the work context. The employer contends that this conclusion is not supported by the evidence because claimant could not identify his assailant. Since claimant was struck from behind and could not identify with certainty who hit him, the employer argues that there was no causal connection shown between the injury and claimant's work.

Here, we have a factual finding by the district court that the assault was work-related. Also, there was strong circumstantial evidence that the assault was committed by another IML employee, Ulin Holder. Claimant testified that about six or seven months earlier, Holder and Hinds had acted together in trying

"to get [him] in trouble" over a broken drive shaft in Goodland. Immediately before claimant confronted Hinds about his disputed right to use the first available truck, he saw Holder in the cab of the next truck over. Claimant also testified that no one else was in the vicinity when he approached Hinds. Therefore, since Hinds and Holder had acted in concert against claimant in the past, and since no one other than Holder, Hinds and claimant were in the vicinity at the time, the logical inference would be that Holder struck claimant in defense of his friend Hinds.

In sum, the employer has failed to demonstrate that the district court applied an incorrect test to determine whether claimant's injury arose out of his employment. Since there was evidence indicating that both the scuffle and the injury arose out of a disagreement over the conditions and incidents of the job, we conclude that the district court properly found that the injury arose out of the claimant's employment.

The employer also argues that regardless of whether an assault injury arose out of work, compensation should be denied when the claimant himself started the fight. The employer points to authority in a minority of jurisdictions which holds that an aggressor's injury can never arise out of his employment or that certain statutory language prohibits compensation because an aggressor's injury results from willful misconduct. 1 Larson, *Workmen's Compensation Law* § 11.15 (1985). The employer contends that the director and district court erroneously held that the identity of the aggressor was irrelevant to this case; it argues that claimant should have been disqualified from coverage as the aggressor.

It must initially be noted that the identity of the aggressor is far from clear-cut. Claimant testified that he and Hinds quarreled about who had the right to drive the truck back to Kansas City; that he grabbed the bills from the truck out of Hinds' hands and started to lay them in the truck; that Hinds came up to him from behind with his fists up in the air; and that claimant then pushed Hinds backward. Claimant stated that when he pushed Hinds, Hinds somehow knocked off his glasses. The claimant stood and watched with his arm in front of him as Hinds regained his balance. Claimant then noticed Hinds looking behind him but was immediately struck from behind.

The difficulty of always pinpointing a single aggressor in a

scuffle is demonstrated by this case. Claimant may have made the first move in grabbing the truck bills but Hinds made the first threat of a punch. In addition, all of the contact was fairly minimal and certainly not intended to cause great injury, until claimant was hit on the head. Therefore, even if claimant was the aggressor, it was not his aggression but the overreaction of his assailant which caused his injury. Nevertheless, since the fact-finders made no finding in this case concerning the identity of the aggressor, it is the underlying legal question of whether such a status may be ignored which must now be resolved.

There are no Kansas cases which have adopted the aggressor defense. Although Larson indicates that Kansas has taken the minority position, the citation in support of this statement is to a Utah case, *Wilkerson v. Industrial Comm'n,* 71 Utah 355, 266 Pac. 270 (1928). 1 Larson § 11.15(a), n. 84.1. Moreover, none of the cases since Brannum have presented a situation where the assault resulted from a quarrel; both *Craig v. Electrolux Corporation,* 212 Kan. 75, 510 P.2d 138 (1973), and *Hensley v. Carl Graham Glass,* 226 Kan. 256, 597 P.2d 641 (1979), involved workers who were the victims of shootings perpetrated by non-employees. Therefore, whether the director and district court correctly held that claimant's possible status as the aggressor was irrelevant to his recovery is a matter of first impression.

The employer contends that the language of K.S.A. 44-501 demonstrates a legislative intent to exempt aggressors from coverage under the act. Specifically, the employer points to the following:

"If it is proved that the injury to the employee results from the employee's deliberate intention to cause such injury, or from the employee's willful failure to use a guard or protection against accident required pursuant to any statute and provided for the employee, or a reasonable and proper guard and protection voluntarily furnished the employee by the employer, or substantially from the employee's intoxication, any compensation in respect to that injury shall be disallowed." K.S.A. 44-501.

Since under this provision, a worker may be ineligible for compensation if his work-related injury resulted from his deliberate intent to cause the injury or the willful failure to use a safety device, employer argues that the statute evidences an intent to disqualify a worker whose responsibility for his own injury goes beyond mere negligence. However, the primary rule to be applied in interpreting the workers' compensation law is

that it should be liberally construed in order to award compensation when it is reasonably possible to do so. *Lackey v. D & M Trucking,* 9 Kan. App. 2d 679, 687 P.2d 23 (1984). The exceptions in K.S.A. 44-501 are fairly specific; the worker is not entitled to compensation if the injury is self-inflicted, if it was due to intoxication or if it results from the willful failure to use safety equipment. Had the legislature intended to include aggression in a work-related dispute in the list of disqualifying factors, it could have done so. As it is, one cannot say that a person who initiates a bit of shoving while arguing about work but who is injured when another person grossly escalates the amount of force being used had a deliberate intention to cause himself injury. To interpret K.S.A. 44-501 as including such a disqualification would be to ignore the principle of liberal construction.

Significant theoretical difficulty is also encountered if the "arising out of" criterion is used as a device for weeding out injuries to aggressors. A majority of courts considering the advisability of such a holding have rejected it on grounds such as those stated in the following quotation:

> "Subsequent cases in other jurisdictions rejecting or abolishing the aggressor defense have adopted similar grounds: that the aggression defense does not appear in the statute; that it is a fault-based concept borrowed from tort law and out of place in compensation law; that the chain of causation is not necessarily broken by the fact of striking the first blow if the episode originated in the employment; that the sole contract between the disputants was employment related; and that disapproval of an employee's misconduct is no ground for frustrating the main purpose of workmen's compensation, which is to prevent dependency of the claimant and his family." 1 Larson § 11.15(c), p. 3-221.

See, *e.g., Colvert v. Industrial Commission,* 21 Ariz. App. 409, 520 P.2d 322 (1974); *Andrews v. Hoss,* 286 Minn. 514, 174 N.W.2d 134 (1970). *Contra, Berryman v. Fettig Canning Corp.,* 183 Ind. App. ___, 399 N.E.2d 840 (1980).

In light of the holding in *Brannum* which rejected the application of tort fault principles to workers' compensation law despite the presence of intentional conduct, and the absence of any statutory language disqualifying the person who starts a fight from coverage under the law, we conclude that the director and district court correctly decided that identification of the aggressor was unnecessary. So long as there is evidence that the injury arose out of and in the course of employment, it is compensable. Since we have already concluded that there was evidence in this

case indicating that both the scuffle and the injury arose out of a disagreement over the conditions and incidents of the job, the finding that the injury arose out of the claimant's employment must be affirmed.

Affirmed.