UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff, AtLee and Malveaux
Argued by videoconference


CHESAPEAKE PUBLIC SCHOOLS
                                                MEMORANDUM OPINION* BY
v.       Record No. 0236-21-1                JUDGE MARY BENNETT MALVEAUX
                                                     OCTOBER 5, 2021
LARENA ANDERSON


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Marilyn N. Harvey (Clarke, Dolph, Hull & Brunick, P.L.C., on
            briefs), for appellant.

            (Christopher L. Daughtry; Rutter Mills, LLP, on brief), for appellee.
            Appellee submitting on brief.


        Chesapeake Public Schools ("employer") appeals from a decision of the Virginia

Workers' Compensation Commission ("the Commission") affirming an award of temporary total

disability benefits to Larena Anderson ("claimant").  Employer argues the Commission erred in

considering the opinion of an unauthorized physician and failing to give due weight to the

opinion of employer's treating physician.  Employer further argues the Commission erred in

affirming the deputy commissioner's finding that claimant is entitled to temporary total disability

benefits based upon the unauthorized physician's opinion.  For the following reasons, we affirm

the Commission's decision.

                                  I.  BACKGROUND

        We review the evidence in the light most favorable to claimant, the prevailing party

before the Commission.  City of Newport News v. Kahikina, 71 Va. App. 536, 539 (2020).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant worked for employer as an elementary school teacher. As she left her classroom on the evening of September 26, 2018, she slipped on the hallway floor. Claimant grabbed at the wall to attempt to break her fall but found herself "sitting in a wet substance." As claimant stood up, a custodian told her that he had just mopped the area. No sign was posted to warn that the floor was wet. Claimant injured her left hip and lower back.

Claimant reported her accident and injuries to employer and was provided with a list of health care providers from which to seek treatment. She selected NowCare Medical Center and visited NowCare on September 27, 2018. During her initial examination, claimant reported pain in her left buttock that extended through her hip and across her lower back. She also reported pain when bending, twisting, and lifting. Claimant was diagnosed with left hip and lumbar strain and placed on restricted work duties.

On October 8, 2018, claimant filed a claim for benefits for injuries sustained to her left hip, buttocks, and left thigh muscle on September 26, 2018.

During a follow-up visit to NowCare, claimant reported that she could not sit, stand, or walk without severe pain. She also stated that after four sessions of physical therapy, she had made "almost no progress." Claimant later expressed her discouragement that she was not getting better. On October 26, 2018, NowCare referred claimant to an orthopedist because she had "failed conservative therapy."

Employer supplied claimant with the names of several physicians who could provide her with further treatment. Claimant selected Dr. Scott Horn, an osteopath and rehabilitation and pain management physician. During her initial appointment with Dr. Horn on November 14, 2018, the doctor noted claimant's lower back, left hip, and left buttock pain and that physical therapy had failed to improve her condition. He ordered continued light-duty work and

scheduled a follow-up visit, during which he treated her with an injection of lidocaine and Depo-Medrol. Claimant reported "[a]lmost complete relief of her pain" following the procedure.

During additional follow-up visits in December 2018 and January 2019, claimant reported relief of her left hip pain but that she continued to experience residual pain in her left sacroiliac joint. She further reported occasional pain in the left lower back when standing for prolonged periods. Claimant was diagnosed with sacroiliitis and released to full-duty work.

By agreement of the parties, on April 10, 2019, the Commission entered an award of lifetime medical benefits for authorized medical treatment causally related to claimant's September 26, 2018 injury. The award was limited to treatment of claimant's left hip and lumbar pain.

Claimant later testified that Dr. Horn's treatment failed to give her lasting relief and that she continued to experience lower back and left hip pain. She researched orthopedists and decided to seek treatment with Dr. Arthur Wardell. During claimant's initial appointment on April 16, 2019, Dr. Wardell, an orthopedist, noted claimant's progressive back pain radiating to her hip. Upon examination of claimant's left hip, Dr. Wardell noted "[n]o fracture, dislocation or degenerative change" but did diagnose a "[l]umbosacral spine sprain." Dr. Wardell also diagnosed a series of other conditions affecting claimant's neck and left arm. He prescribed pain medication and advised claimant to stay out of work.

Claimant informed employer that she was being treated by Dr. Wardell for her lower back issues. Employer told her to return to Dr. Horn and arranged an appointment with him for May 30, 2019.

At that appointment, Dr. Horn noted claimant's report of neck and upper extremity pain as well as her complaint of persistent left hip pain. He further noted that she had had an MRI which indicated synovitis of the left hip as well as "low-grade sprain." Dr. Horn told claimant

that he did not think her workplace injury and her neck and arm pain were related. He noted that claimant had reached maximum medical improvement, no further treatment was required at that time, and claimant could return to full-duty work. Dr. Horn provided employer with a letter to that effect and authored a note stating that claimant's neck and arm pain were not related to her September 26, 2018 workplace injury.

Claimant later testified that during her appointment with Dr. Horn on May 30, 2019, Dr. Horn did "nothing, he sat across [from me]. He didn't even examine me that day."

From June 2019 through February 2020, claimant returned monthly to Dr. Wardell's practice. During that time, she continued to report pain in her neck, left arm, lower back, left leg, and buttock. She also experienced lower back spasms and left leg numbness, tingling, and reduced sensation. Dr. Wardell ordered an MRI and treated claimant with pain medication, physical therapy, and a lumbar orthosis, or lower back brace. Dr. Wardell noted that claimant's MRI indicated "[m]ild neural foraminal stenosis L3 through S1." He continued to diagnose her with a lumbar sprain and instructed her to remain out of work.

On February 27, 2020, claimant filed a claim seeking payment of her medical expenses from Wardell Orthopedics as well as temporary total disability benefits.

On March 20, 2020, Dr. Wardell prepared a letter for claimant's attorney. After stating that he had reviewed claimant's treatment records from the period prior to his first appointment with her, Dr. Wardell wrote that claimant

> was involved in a slip and fall accident . . . at work. She was treated with physical therapy, injection therapy, and oral steroids prior to seeing me. . . . [S]he developed progressive neck pain, but this did not manifest itself for several months . . . . I have seen [claimant] for both neck complaints and back complaints. She has had an MRI of her lumbar spine, which shows neural foraminal stenosis at L3 through S1, and at almost every examination she has had restrictions of motion, tenderness, and often spasm in her back. It has also been noted that she has pain radiating down the left leg with numbness and tingling in her left foot.

I cannot say to a reasonable degree of medical certainty that [claimant's] neck complaints are directly attributable to her slip and fall accident insofar as her neck symptoms did not occur until several months after her accident; however, to a reasonable degree of medical certainty, [claimant] incurred a lumbosacral spine sprain and lumbar radiculopathy as a result of her slip and fall of September 26, 2018. Disregarding any neck issues, [claimant] would still be out of work for her back injury . . . .

At a hearing before the deputy commissioner, claimant testified that the lower back brace prescribed by Dr. Wardell helped her with mobility and walking and that neither Dr. Horn nor anyone at NowCare had prescribed any such item for her. When counsel for employer asked claimant why she had not returned to see Dr. Horn after May 30, 2019, claimant responded that "Dr. Wardell got to the bottom of what was going on with me."

The deputy commissioner held that the evidence did not support a finding that Dr. Horn's treatment was medically inappropriate or that other circumstances justified requiring employer to pay for Dr. Wardell's unauthorized medical treatment. However, the deputy commissioner also held that after considering the evidence, and particularly the records and medical opinion of Dr. Wardell, claimant had proven that she was totally disabled due to her left hip and lower back injuries. Accordingly, the deputy commissioner awarded claimant temporary total disability benefits from June 28, 2019 and continuing.

Employer requested review of the disability finding by the full Commission.

On February 8, 2021, a majority of the Commission affirmed the deputy commissioner, stating:

> We note that when the claimant was initially treated at NowCare, they recommended treatment with an orthopedist. The employer, however, provided a panel of pain management doctors from which the claimant chose Dr. Horn. While Dr. Wardell was not an authorized treating physician, as an orthopedic specialist who has treated the claimant since April 2019, we find his opinion regarding the claimant's disability persuasive. . . . In his March 20, 2020 correspondence, Dr. Wardell opined that the claimant's disability was related to her lumbosacral spine sprain and lumbar

radiculopathy which was causally related to her work accident. Dr. Horn opined in May 2019 that the claimant was at maximum medical improvement and could return to full duty work. He did not, however, offer any explanation for the contrary findings of Dr. Wardell. After reviewing the medical evidence, we agree with the Deputy Commissioner that the claimant proved she was disabled due to her causally related left hip and lumbar conditions.

Employer appealed to this Court.

## II. ANALYSIS

### A. The Commission's Weighting of the Physicians' Medical Opinions

Employer argues the Commission erred in concluding that the opinion of an unauthorized physician, Dr. Wardell, was more credible than the opinion of claimant's treating physician, Dr. Horn. Specifically, it contends that the opinion of Dr. Horn, as claimant's authorized treating physician, was entitled to great weight by the Commission and that Dr. Wardell's opinion as to disability "is not more persuasive than the opinion offered by Dr. Horn."[1]

"On appeal, 'we view the evidence in the light most favorable to the prevailing party before the [C]ommission'" and "'defer to the [C]ommission in its role as fact finder . . . .'" Paramont Coal Co. Va., LLC v. McCoy, 69 Va. App. 343, 349-50 (2018) (alterations in original)

---

[1] Employer advances two additional arguments with respect to this assignment of error. First, it contends that the Commission erred in considering and adopting the medical opinion of Dr. Wardell because Baltimore v. Benedict Coal Corp., 182 Va. 446 (1944), dictates that the Commission may only rely on an unauthorized physician's opinion when it is contrary to the treating physician's opinion and "the treating physician's opinion is shaded by doubt." Employer did not preserve this argument for appellate review because it did not present this argument to the Commission, and thus we will not address it. See Hampton Inn v. King, 58 Va. App. 286, 300-01 (2011); Rule 5A:18. Further, employer does not argue that we should invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18, and we decline to do so *sua sponte*. See Hampton Inn, 58 Va. App. at 301.

Second, employer argues that the case relied upon by the Commission as authority providing that it may accept an unauthorized physician's medical opinion regarding disability, Richmond Mem'l Hosp. v. Allen, 3 Va. App. 314 (1986), "does not clearly stand for [that] proposition." However, at oral argument, counsel for employer acknowledged that "the opinion of an unauthorized treating physician can be utilized to determine a claimant's work status" and that Richmond Mem'l Hosp. "is the prime example." Accordingly, we regard this argument as waived.

- 6 -

(quoting Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72 (2003)).  "In this role, the [C]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions.  'The award of the [C]ommission . . . shall be conclusive and binding as to all questions of fact.'"  Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 252 (2010) (last alteration in original) (quoting Bass v. City of Richmond Police Dep't, 258 Va. 103, 114 (1999)).  Thus, "the Commission's factual findings are 'conclusive and binding' if supported by credible evidence.  These principles apply 'even [if] there is evidence in the record to support a contrary finding.'"  Paramont Coal Co. Va., LLC, 69 Va. App. at 350 (alteration in original) (citations omitted) (first quoting Jackson v. Ceres Marine Terminals, Inc., 64 Va. App. 459, 463 (2015); then quoting City of Waynesboro v. Griffin, 51 Va. App. 308, 317 (2008)).  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Smith-Adams v. Fairfax Cnty. Sch. Bd., 67 Va. App. 584, 590 (2017) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

On the question of disability, "[t]he opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it[.]"  Vital Link, Inc. v. Hope, 69 Va. App. 43, 64 (2018) (last alteration in original) (quoting United Airlines, Inc. v. Hayes, 58 Va. App. 220, 238 (2011)).  "[S]uch an opinion is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation."  Thompson v. Brenco, Inc., 38 Va. App. 617, 623 (2002).  "If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'"  United Airlines, Inc. v. Sabol, 47 Va. App. 495, 501-02 (2006) (quoting Williams v. Fuqua, 199 Va. 709, 714 (1958)); see also C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1071 (1978) (noting that while great weight should be given to a treating physician's

- 7 -

evidence, that "opinion is not binding on the Commission" and that "[t]he probative weight to be accorded such evidence is for the Commission to decide; and if it is in conflict with other medical evidence, the Commission is free to adopt that view 'which is most consistent with reason and justice'" (citation omitted) (quoting Williams, 199 Va. at 714)). Thus, where medical opinions conflict, "the [C]ommission [is] free to decide which evidence [is] more credible and should be weighed more heavily." Thompson, 38 Va. App. at 624.

We are not persuaded by employer's argument that the Commission erred in finding Dr. Wardell's medical opinion more persuasive than Dr. Horn's medical opinion on the issue of claimant's disability. Rather, we conclude that credible evidence in the record supports the Commission's factual finding that the opinion of Dr. Wardell should be accorded more weight than the opinion of Dr. Horn. We note that when employer's initial healthcare provider for claimant, NowCare, determined that claimant had failed conservative therapy, it recommended that she see an orthopedist for further treatment. Dr. Wardell, unlike Dr. Horn, is an orthopedist. Further, while Dr. Horn became claimant's authorized treating physician, and the opinion of such a physician is generally entitled to great weight, his opinion was not accompanied by any reasoning or explanation. Dr. Horn's May 30, 2019 opinion stated only that claimant had reached maximum medical improvement, required no further treatment at that time, and could return to full-duty work. By contrast, Dr. Wardell's opinion reviewed and discussed claimant's injury and course of treatment, history of symptoms, and MRI and physical examination results. His opinion also distinguished those symptoms and conditions that he could directly attribute to claimant's workplace injury from those which he could not directly attribute to that injury. Further, Dr. Wardell made clear that in forming his opinion he reviewed claimant's medical records from her previous treatment, including her treatment by Dr. Horn. However, Dr. Horn's May 30, 2019 opinion does not indicate that he reviewed Dr. Wardell's records of his

examination, diagnosis, and treatment of claimant on April 16, 2019.  Additionally, claimant testified that Dr. Horn "sat across" from and did not examine her on May 30, 2019, even though she had not seen Dr. Horn or his physician assistant since January 15, 2019.  Because this evidence in the record supports the Commission's factual finding that Dr. Wardell's medical opinion was more persuasive than Dr. Horn's medical opinion, we will not disturb that finding on appeal.[2]

B.  The Commission's Finding of Temporary Total Disability

Employer also argues the Commission erred in affirming the deputy commissioner's finding that claimant is entitled to temporary total disability benefits based on Dr. Wardell's medical opinion.  Specifically, it contends that Dr. Wardell's opinion does not provide credible evidence for the finding that claimant has been temporarily totally disabled from June 28, 2019.  Rather, employer argues, the medical opinion of claimant's treating physician, Dr. Horn, is credible and his "determination that [claimant] was released to full duty for her lower back and left hip issues, when given its appropriate weight, requires reversal."

"A party seeking workers' compensation bears the burden of proving [a] disability and the periods of that disability."  Vital Link, Inc., 69 Va. App. at 64.  "Whether [the claimant] suffered a continuing disability is a question of fact" and "'[w]e are bound by the [C]ommission's factual findings supported by credible evidence, despite the fact that there may

_____

[2] In connection with this assignment of error, employer also urges this Court to reverse the Commission because its consideration of Dr. Wardell's opinion "provides claimants with the wrong incentives" and "licenses claimants to engage in physician shopping . . . to find an unauthorized physician who will determine they are unable to work."  Employer thus presents a policy argument for reversing the Commission.  "Public policy questions . . . fall within the purview of the General Assembly.  In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, [an appellate court's] function is limited to adjudicating . . . question[s] of law[.]"  Daily Press, LLC v. Off. of the Exec. Sec'y, 293 Va. 551, 557 (2017).  We decline to reverse the Commission's factual finding on the weighing of the medical opinion evidence—a finding that is supported by credible evidence in the record—based upon employer's policy argument drawn from hypothetical concerns.

be evidence to support a contrary finding.'" Id. (quoting Hoffman v. Carter, 50 Va. App. 199, 209 (2007)). As noted above, in determining whether credible evidence exists, this Court does not retry the facts, reweigh the evidence, or make its own determination of the witnesses' credibility. Smith-Adams, 67 Va. App. at 590.

We have previously determined that the Commission did not err in finding Dr. Wardell's medical opinion more credible than the medical opinion of Dr. Horn. Accordingly, the remaining issue before the Court is whether Dr. Wardell's medical opinion itself is credible evidence supporting the Commission's disability finding. In its review opinion, the Commission made clear that it had carefully reviewed the medical evidence in finding that Dr. Wardell's opinion was persuasive and that it supported the deputy commissioner's finding that claimant is temporarily totally disabled. Thus, in asking this Court to hold that Dr. Wardell's medical opinion is not credible evidence supporting a disability finding, employer asks that we reweigh the evidence previously weighed by the Commission when it evaluated Dr. Wardell's opinion and found it persuasive. Under well-established principles of appellate review, we will not revisit the Commission's weighing of the evidence in making such a credibility finding. See id. Accordingly, we reject employer's argument.

### III. CONCLUSION

We hold that the Commission did not err in crediting the medical opinion of Dr. Wardell rather than the medical opinion of Dr. Horn, or in affirming the deputy commissioner's finding that claimant is entitled to temporary total disability benefits based on Dr. Wardell's opinion. Accordingly, we affirm the Commission's decision.

Affirmed.